IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JEREMY LYNN RANKINS                                                                         PLAINTIFF

vs.                                        Civil No. 6:21-CV-06117

JAIL ADMINISTRATOR SARAH HANEY,
Pike County Detention Center; SHERIFF
TRAVIS HILL, Pike County, Arkansas; and
JASON McDONALD, Criminal Investigation
Division, Pike County Sheriffs Office                                                    DEFENDANTS

**MEMORANDUM OPINION**

This is a civil rights action filed *pro* se by Plaintiff, Jeremy Lynn Rankins under 42 U.S.C. § 1983. On September 30, 2021, the parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 16). Before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 21). Plaintiff has filed a Response in opposition to the motion. (ECF No. 26). The Court finds this matter ripe for consideration.

**I. FACTUAL BACKROUND**

Plaintiff is currently incarcerated in the Arkansas Division of Correction ("ADC") – Cummins Unit. His claims in this lawsuit arise from alleged incidents which occurred at the Pike County Detention Center ("PCDC") in Murfreesboro, Arkansas in 2021. (ECF No. 1).

On March 31, 2021, Plaintiff was arrested and booked into the PCDC. (ECF No. 22, p. 1). That same day, Plaintiff indicated on his Classification Report that he had recently been evaluated at the emergency room by a physician for chest pains and released. When asked if he ad any other medical problems he answered "No". (ECF No. 22-1, p. 50).

1

On May 19, 2021, Plaintiff submitted a request which stated:

> Mrs. Sarah I been having a lot of blood in my stool and I was supposed to go see a specialist because they didn't know why I was losing a lot of blood so when my 90 days is up is there any way I can get a OR Bond to go have this matter taken care of because this is a life threatening situation and I need to have this matter taken care of as soon as possible.

(ECF No. 22-1, p. 14). The next day, a member of PCDC staff responded: "I will pass this along to sarah please fill out a medical request this will also be up to the judge." *Id.*

On May 26, 2021, Plaintiff submitted a medical request which stated: "I have been having a lot of blood in my stool and I was supposed to go see a specialist because they was wanting to know why I was losing a lot of blood and they didn't know where it was coming from." (ECF No. 22-1, p. 48). The same day, PCDC contract medical personnel – not a party to this action – wrote a note on this medical request stating: "Please witness blood in stools." *Id.* A note written by Defendant Sarah Haney also appears on this request: "No one has witnessed any blood in his stool! Nothing was said during booking during medical questions." *Id.*

On July 2, 2021, Plaintiff submitted a medical request which stated:

> I am still having bleeding in my stool and I'm not on a 90 sanction now so can I get a or bond so I can get my medical condition taken care of Mrs. Sarah I know you have the authority to do so I have seen you OR a couple of people since I have been here so can you please help me out with this matter so I can go see my own doctor and get this matter taken care of.

(ECF No. 22-1, p. 52). The same day, medical personnel wrote a note on this request stating: "Per admin monitor see next visit." *Id.* On July 6, 2021, Defendant Haney wrote a note on this request which stated: "Still hasn't shown any evidence of blood in stool." *Id.*

On July 4, 2021, Plaintiff submitted a request which stated:

> I think my blood pressure is messing up on me because I be getting real cold it really feels like I'm low on blood because the last time I had symptoms like this

2

> my blood count. Was low and they had to give me some blood I really need to go to the mercy clinic get me my check up and I really need this looked at.

(ECF No. 22-1, p. 54). The same day, medical personnel wrote a note on this request stating: "Please ck BP q Shift." *Id.*

On July 15, 2021, Plaintiff submitted a request which stated:

> Im requesting to see if I can get a OR bond because I haven't heard from none of my family and Im very worried I been writing letters and I haven't gotten any response I need some one to help me I know yall OR people because yall let Jeffrey Shelton go jasper Austin and jayce foggle and I really feel like this is not fair to me because I have been here longer than any of them can you please help me out I have never missed a court date I have never ran I live right down the road at 405 west main hwy 27 south Murfreesboro Arkansas I really need to get out and go to the doctor my stomach is starting to bother me again and I know yall don't want to pay for it I got my own insurance so please see what you can do.

(ECF No. 22-1, p. 31). Plaintiff added: "Attention Mrs Sarah Haney I really need to get out so that I can got to my doctor because my stomach is hurting like it did before and I really need to have my check up for my blood being low I got my own insurance to pay for this." *Id.* at 30. Plaintiff also stated on this same request:

> I really need your help getting a OR please some days my stomach hurts bad and I'm still bleeding internal because it is coming out of my stool this has been going on for a while I put some medical request in but I was supposed to have went to a specialist about my stomach and internal bleeding because my doctor told me I was losing a lot of blood and he didn't know where it was coming from I really need to go to my specialist.

*Id.* at 21-22. That same day, Defendant Haney replied: "I can get my dr to see you. I cannot OR you im sorry. Fogles bond was reinstated by the judge. He wasn't OR'd." *Id.* at 31.

Plaintiff also submitted a grievance on July 15, 2021, stating: I HAVE PT NUMEROUS OF SICK CALLS IN ABOUT THIS BLOOD IN MY STOOL AND I STILL HAVENT SEEN A DOCTOR ABOUT THIS MATTER AND MY STOMACH HAS BEEN HURTING BAD FOR

3

THE LAST MOTH WHY COME THE DOCTOR WANT DO ANYTHING." (ECF No. 22-1, p. 33). Plaintiff added to this grievance stating: "I HAVE MY OWN INSURANCE TO PAY FOR THIS I WAS SUPPOSE TO GO SEE A SPECIALIST BUT NOW IM JUST GOING TO FILE A 1983 FORM AND A HABEAS COURPUS ON THIS MATTER." *Id.* Defendant Haney replied that same day: "the doctor will be back on the 22nd and I will make sure he sees you." *Id.*

Also on July 15, 2021, Plaintiff submitted a grievance which stated: "I PUT A MEDICAL REQUEST AND SENT A REQUEST TO YALL ABOUT THIS MATTER WITH BLOOD IN MY STOOL AND THE DOCTOR HADNT SEEN ME YET AND ITS GETTING WORSE." (ECF No. 22-1, p. 35). Plaintiff added to the grievance stating: "I HAVE MY OWN INSURANCE YALL CAN OR ME AND LET ME GO GET THIS MATTER TAKEN CARE OF LIKE YALL DID JAYCE FOGGLE OR I CAN FILE A 1983 FOR WITH A WRIT OF HABEAS COURPUS." *Id.* The same day, Defendant Haney replied: "Jeremy I have already ask and I cannot OR you I will however make sure the dr here sees you." *Id.*

On July 19, 2021, Plaintiff submitted a grievance which stated: MR MCDONALD CAME TO THE BACK AND PASSED THE RED LINE WIT HIS PISTOL ON HIS SIDE THIS IS THE LAW HE CAN NOT BRING HIS FIREAREM PASS THAT LIE SO WHY DID HE HAVE IT BACK HERE." (ECF No. 22-1, p. 41). Plaintiff added a statement to the grievance: "IM GOING TO FILE A 1983 AND A LAWSUIT ON THIS MATTER." *Id.* The same day, a non-party member of PCDC staff replied: "I will pass this info to sara." *Id.*

On July 31, 2021, Plaintiff submitted a medical request which stated: "My blood pressure is very high it was 173/116 heart rate 92 and my blood pressure medicine is not working." (ECF No. 22-1, p. 55). The same day, a non-party PCDC contract medical personnel handwrote a note

on this request stating in part "please verify…" *Id.* The note is not legible but appears to refer to verification of some sort of medication.

Defendant Haney states in her affidavit that when Plaintiff reported he needed medical care for blood in his stool, she timely responded to the request to ensure Plaintiff received medical care from contract medical personnel at PCDC. (ECF No. 22-1, p. 4). She goes on to state Plaintiff was seen by medical personnel on multiple occasions regarding his complaint about blood in his stool and he was told repeatedly by medical personnel and Defendant Haney, that he needed to show evidence of blood in his stool for the medical providers to determine any diagnosis and treatment. *Id.* She states Plaintiff never directed medical staff or jail staff to evidence of blood in his stool. Defendant Haney stated if he had, she would have ensured that medical staff was alerted and responded appropriately. *Id.*

According to her affidavit, Defendant Haney was not authorized to release Plaintiff on his own recognizance or reduce his bond as he repeatedly requested during his detention in the PCDC as bond decisions rest with the presiding judge in a pre-trial detainee's criminal case. (ECF No. 22-1, p. 1).

According to her affidavit, Defendant Haney did not believe that Plaintiff's complaints about blood in his stool warranted emergency medical care or immediate transport of him to a hospital emergency room. (ECF No. 22-1, p. 2). Plaintiff did not request to be transported to a hospital emergency room. *Id.* In addition, the PCDC contract medical personnel, who consulted with Plaintiff several times about this issue, did not refer him to a hospital or other outside medical provider, regarding his complaints about blood in his stool. *Id.*

According to her affidavit, Defendant Haney believed that Plaintiff's complaints about

blood in his stool warranted medical attention from the contract medical providers at the PCDC, and she ensured Plaintiff was scheduled to see the contract medical providers and was seen by the contract medical provider in response to his complaints. (ECF No. 22-1, pp. 2-3). Defendant Haney also states to her knowledge, every time Plaintiff submitted a medical request about blood in his stool, he was seen by medical personnel in response. She also states she scheduled Plaintiff to see the physician in response to his complaints on July 15, 2021. *Id.* at p. 3.

Defendant Hill, the Sheriff of Pike County, had no personal involvement in Plaintiff's requests, grievances, or medical requests and Defendant Hill was not present at the PCDC on July 16, 2021, when Defendant McDonald allegedly brought his firearm into the PCDC. (ECF No. 22-1, p. 3).

It is the policy of the PCDC that the facility shall be operated in a constitutional manner in "compliance with the Arkansas Jail Standards and provide a safe living environment for inmates and a safe working environment for the staff. Written policy governs the operation of the facility, and the staff is to conform to policy." (ECF No. 22-1, p. 59)

The PCDC contracts with an outside company to provide health care services to persons confined at the facility. Jail staff have limited involvement in the provision of medical services to the inmates. The primary responsibilities of jail staff are to ensure that persons in need of medical, dental and/or mental health care are referred to the contract health care provider in an efficient manner and provide necessary emergency first aid to the inmates until such a time that health care personnel arrive. (ECF No. 22-1, p. 133).

Inmates are required to fill out a Medical Request form for sickness and/or medications needed. The forms are provided to the inmates by the PCDC's officers upon request. (ECF No.

22-1, p. 142). After a Medical Request is submitted, an inmate will see the PCDC's contract medical provider - a Nurse Practitioner. The Nurse Practitioner visits the PCDC at least once per week. The Nurse Practitioner is on call 24/7 in case of emergency situations that cannot wait for the next visit. *Id.*

The PCDC also has a policy and custom which prohibits PCDC staff and officers with the Pike County Sheriff's Office from carrying firearms within the PCDC. (ECF No. 22-1, p. 3). After Defendant Haney received Plaintiff's grievance claiming that Defendant McDonald carried a firearm into the jail, she reviewed the camera footage and spoke with Defendant McDonald. *Id.* Defendant Haney's review of the camera footage did not show a firearm at McDonald's side while he was inside the jail on July 16, 2021.[1] *Id.*

## II. PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on July 29, 2021. (ECF No. 1). He names the following individuals as Defendants: Sarah Haney - the Jail Administrator for the PCDC; Travis Hill – the Sheriff of Pike County, Arkansas; and Jason McDonald – a Criminal Investigator with the Pike County Sheriff's Department. (ECF No. 1). At that time, Plaintiff states he was a pretrial detainee. *Id.* at p. 2. He is suing Defendants Haney, Hill, and McDonald in both their personal and official capacities. *Id.* at pp. 4-7.[2] Plaintiff seeks compensatory damages. *Id.* at p. 9.

Plaintiff describes Claim One against Defendants Haney and Hill as "denial of medical care, constitution rights were broken alone with my 2, 4, 5, 6, 8 amendments." (ECF No. 1, p. 4). He specifically states:

I put a medical request in on 5-26-21 at 2:40 pm and it stated that I have been having

---

[1] This video footage has not been provided to the Court for review.
[2] Even though Plaintiff only checked the official capacity box for Claim One against Defendants Haney and Hill and only checked the individual capacity box for Claim Two against McDonald, Plaintiff has provided descriptions of claims in both personal and official capacities against all Defendants in his Complaint.

> a lot of blood in my stool and I asked to get a OR bond so that I can get this matter taken care of after my 90 day sanction and it was up on June 30 and I still hadn't had any medical attention on this matter and the Pike County Detention Center just released Jayce Foggle with a leg injury on 7/14/21 and I'm still in the Pike County jail trying to get something done about my matter.
>
> Sarah Haney & Travis Hill did not get me any medical attention. I was denied proper medical attention my constitutional rights were broken along with my 2, 4, 5, 6, 8 amendments and I still haven't been seen on this matter.

*Id.* at 4-5. Plaintiff describes his official capacity claim for Claim One as follows, "The Pike County Detention Center has denied me of medical attention about blood being in my stool. I put a medical request in on 5-26-21 and it is now 7-24-21 and I still hadn't had any medical … attention about this matter at all." *Id.* at p. 5.

Plaintiff describes Claim Two as "Condition of confineme, no officer is suppose to come in the back of the jail with their firearm on their side by all means." (ECF No. 1, p. 6). Plaintiff alleges on July 16, 2021, "I felt threatened when office CID Jason McDonald came to the back … and passed the red line with his pistol on his side. There was a lethal weapon in the back on CID Jason McDonald side while the doors to the pods were open … no officer is suppose to have his gun in the back like that." *Id.* Plaintiff describes his official capacity claim against Defendant McDonald in Claim Two as "the officer came to the back with his firearm on his side and it is the state law not to bring a firearm to the back of the jail and I filed a grievance on the matter." (ECF No. 1, p. 7).

On March 10, 2022, Defendants filed the instant Motion for Summary Judgment, a Brief in Support of the Motion, and a Statement of Facts. (ECF Nos. 21, 22, 23). They argue: 1) there is no proof of any personal involvement by Defendant Hill; 2) Defendants Haney and Hill were not deliberately indifferent to Plaintiff's serious medical needs; 3) the allegations against Defendant

McDonald fail to state a claim for relief; 4) Defendants are entitled to qualified immunity; and 5) there is no basis for official capacity liability. (ECF No. 21).

On March 31, 2022, Plaintiff filed an unverified Response to the motion stating in part:

> … On the date of May 26th 2021 when Plaintiff requested medical attention due to a urgent need to stop the flow of blood in the stool from constantly depleting from his body … Defendants were written several medical request as the symptoms increased with cramping, nausea & dizziness. Plaintiff … filed a urgent medical request on July 24, 2021 asserting a factual redress that know medical staff or administration had provided a inquiry … The physician never showed and Plaintiff was left to suffer blood lose, and anemic reactions …
>
> Plaintiff … was retaliated against the protect right to file medical request and the redress, when Deputy Dale Hartley stated: checking toilets is beneath my pay grade! Never verifying the evidence of blood flowing from rectum.
>
> … Then, Defendant intimated the Plaintiff with bringing firearm to the cell block. This was not a separate situation, but a conjunction incident intended to cease the complaints & the grievances …

(ECF No. 26). Plaintiff also attached two affidavits from Yang Chanthavong and Thomas Watson dated March 23, 2022, signed in Lincoln County, Arkansas. The affidavits each state these individuals " … witnessed Mr. Jeremy Rankins was sick in the Pike County Detention Center as well as having blood in his stools and the detention deputies failed to get Mr. Rankins proper medical Treatment." *Id.* at pp. 11-12.

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the

non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).

"A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

As an initial matter, Plaintiff's allegations concerning cramping, nausea, dizziness, arising from blood in his stools and retaliation and intimation by Defendants and Deputy Dale Hartley were raised in his unverified Response to the Defendants' summary judgment motion for the first time. These allegations were not part of Plaintiff's claims in his Complaint and are not properly before this Court.

### A. Claim One – Denial of Medical Care

Plaintiff alleges Defendants Haney and Hill denied him medical care. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his claim of denial of medical care, Plaintiff must prove Defendants acted with

deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

Plaintiff alleges in his verified Complaint that he had blood in his stools. However, there is no evidence Plaintiff was ever seen by a physician for this condition prior to his arrival at the PCDC. Defendant Haney stated in her affidavit that she did not consider Plaintiff's condition as one which needed emergency care, but she did acknowledge that she believed he should be seen by the PCDC's medical contract provider. Accordingly, the Court will treat Plaintiff's medical

condition as one a lay person would recognize as requiring medical attention.[3]

  1. **Defendant Hill**

At the time of the events in question, Defendant Hill was the Sheriff Pike County. General responsibility for supervising a detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

There is no summary judgment evidence Defendant Hill had any knowledge of Plaintiff's medical conditions or that he was involved in way with Plaintiff's medical care or lack thereof. Plaintiff only makes the conclusory allegation that Defendant Hill "did not get him medical care". (ECF No. 1, p. 5). Accordingly, Defendant Hill is entitled to summary judgment on Plaintiff's personal capacity claim against him for denial of medical care.

  2. **Defendant Haney**

The summary judgment record reflects the PCDC contracts with an outside company to deliver and provide health care services to its inmates. The PCDC's staff, including Defendant Haney, have limited involvement in the provision of medical services to the inmates. The primary responsibility of Defendant Haney and other PCDC staff is to ensure that persons in need of medical care are referred to the contract health care provider in an efficient manner and, in case of an emergency, to provide necessary emergency first aid to persons until health care personnel

---

[3] While the Court has not located a case specifically holding that blood in a person's stool constitutes a serious medical condition, the Eighth Circuit has treated the condition as one requiring medical attention when the parties have agreed to treat it as such. *See Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997).

arrive at the PCDC.

First, there is no evidence to suggest that Plaintiff's medical condition warranted emergency treatment. Most of Plaintiff's requests for treatment included a request for Defendant Haney to release him or give him an "OR bond" so he could have the issue addressed by a free world doctor so his insurance could pay for it. Moreover, Plaintiff never asked to be sent to the hospital and the PCDC contract medical personnel – i.e. the Nurse Practitioner – did not refer him to a hospital or other outside medical provider. It is well established that inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Long*, 86 F.3d at 765).

Second, the Court finds there is no evidence Defendant Haney was deliberately indifferent to Plaintiff medical needs. The summary judgment records shows Defendant Haney did not ignore Plaintiff's complaints concerning blood in his stools. To the contrary, she consistently responded to Plaintiff's written requests and followed up to ensure Plaintiff would be seen by medical personnel. The contract medical professionals were the ones who instructed Plaintiff to provide a sample for analysis, diagnosis, and treatment. However, Plaintiff did not provide the medical personnel or Defendant Haney with any sample for analysis. Accordingly, the Court finds Defendant Haney was not deliberately indifferent to Plaintiff's medical needs, and she is entitled to summary judgment on Plaintiff's personal capacity claims set forth in Claim One.

**B. Claim Two – Firearm inside the PCDC**

Plaintiff alleges Defendant McDonald violated his constitutional rights when he brought his firearm into the PCDC in violation of the detention center's policy and other state regulations that prohibit firearms in jails. Defendants argue Defendant McDonald did not wear his firearm into

a prohibited area, Plaintiff's Fourteenth Amendment substantive due process rights were not violated, and Plaintiff does not allege he was harmed in any way. The Court will assume – for purposes of this opinion – that Defendant McDonald did carry his firearm into the PCDC on September 16, 2021. This fact alone, however, is insufficient to survive summary judgment motion.

The Fourteenth Amendment right to substantive due process protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them. *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007). Under the Fourteenth Amendment, a state has a duty both to protect those in its custody and those who are subjected to state-created-dangers. *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011). To succeed on a state-created-danger claim, a Plaintiff must prove: (1) that he was a member of "a limited, precisely definable group," (2) that the municipality's conduct put him at a "significant risk of serious, immediate, and proximate harm," (3) that the risk was "obvious or known" to the municipality, (4) that the municipality "acted recklessly in conscious disregard of the risk," and (5) that in total, the municipality's conduct "shocks the conscience." *Id*. at 891.

Whether conduct shocks the conscience is a question of law. *Terrell v. Larson,* 396 F.3d 975, 981 (8th Cir. 2005) (en banc). "Only a purpose to cause harm unrelated to the legitimate object of the government action in question will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Mitchell v. Dakota Cty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020) (quoting *Folkerts v. City of Waverly*, *Iowa,* 707 F.3d 975, 981 (8th Cir. 2013) (emphasis removed)). While deliberate indifference may be sufficient in very limited circumstances, *Fields*, 652 F.3d at 891, "[m]ere negligence can never be conscience-shocking and

14

cannot support a claim alleging a violation of substantive due process rights." *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005).

Here, Plaintiff failed to either allege or provide summary judgment evidence that Defendant McDonald intended to cause harm. He further failed to allege or provide summary judgment evidence that he was harmed when Defendant McDonald entered the PCDC on one occasion wearing his holstered firearm. At most, Defendant McDonald was negligent, which cannot support a claim of constitutional violation.[4]

Moreover, the fact that Defendant McDonald ignored a policy of the PCDC or other state regulation which prohibited firearms in the PCDC does not rise to the level of a constitutional violation. It is well settled that prisoners do not have a constitutional right to enforce compliance with internal prison rules or regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having ... prison officials follow prison regulations"); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy").

Accordingly, the Court finds Defendant McDonald is entitled to summary judgment on Plaintiff's personal capacity claim in Claim Two.

### C. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the

---

[4] To the extent that the claim could be construed as an Eighth Amendment failure to protect, the lack of any actual physical injury bars that claim as well. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (compensable Eighth Amendment claims require more than *de minimis* injuries.)

employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Pike County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [o county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of Pike County under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

In *Johnson v. Douglas County Medical Dept.,* 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements of establishing the existence of an unconstitutional custom. It stated:

> To establish a claim for 'custom' liability, [Plaintiff] must demonstrate: 1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) that Plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Id.* at 828 (citations omitted).

The summary judgment record confirms the PCDC had policies in place to provide detainees with constitutionally sufficient medical care and policies which prohibited officers from carrying firearms into the PCDC. Plaintiff has not alleged or described any policy, practice, or custom of Pike County that contributed to a violation of Plaintiff's constitutional rights. There is

no summary judgment evidence Defendants acted in a manner showing the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct . . ."

Accordingly, Plaintiff's official capacity claims against all Defendants fail as a matter of law. *Id.*

## V.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 21) is **GRANTED** as to all Plaintiff's individual and official capacity claims against Defendants Haney, Hill, and McDonald. These claims are **DISMISSED WITH PREJUDICE.**[5]

A judgment of even date shall be entered separately.

**IT IS SO ORDERED, this 29th day of September 2022**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[5] Because the Court has found Defendants did not violate any constitutional right of Plaintiff, they are entitled to qualified immunity.